IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| WASEEM DAKER, | :: | CIVIL ACTION NO. |
| Cobb County Inmate # 277371, | :: | 1:10-CV-02084-RWS |
|     Plaintiff, | :: | |
| | :: | |
| v. | :: | |
| | :: | |
| NEIL WARREN, | :: | PRISONER CIVIL RIGHTS |
| Sheriff, Cobb County, | :: | 42 U.S.C. § 1983 |
| COBB COUNTY, | :: | |
|     Defendants. | :: | |

**ORDER AND OPINION**

Plaintiff Waseem Daker, a Georgia prisoner, has submitted this *pro se* civil rights action, seeking relief under 42 U.S.C. § 1983. Daker been granted *in forma pauperis* status. (Doc. 3.) The matter is now before the Court for an initial screening.

**I.    The Legal Framework**

    **A.    28 U.S.C. § 1915A Review**

Title 28 U.S.C. § 1915A requires a federal court to conduct an initial screening of a prisoner complaint seeking redress from a governmental entity, or from an officer or employee of such an entity, to determine whether the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief. A complaint is

frivolous when it "has little or no chance of success" – for example, when it appears "from the face of the complaint that the factual allegations are clearly baseless[,] the legal theories are indisputably meritless," or "the defendant's absolute immunity justifies dismissal before service of process." Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993) (internal quotations omitted). A complaint fails to state a claim when it does not include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level," and complaint "must contain something more . . . than . . . statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). See also Ashcroft v. Iqbal, _ U.S. _, 129 S. Ct. 1937, 1951-53 (2009) (holding that Twombly "expounded the pleading standard for all civil actions," to wit, conclusory allegations that "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true," and, to escape dismissal, complaint must allege facts sufficient to move claims "across the line from conceivable to plausible") (internal quotations omitted); Oxford Asset Mgmt. v. Jaharis, 297 F.3d 1182, 1187-88 (11th Cir. 2002)

(stating that "conclusory allegations, unwarranted deductions of facts[,] or legal conclusions masquerading as facts will not prevent dismissal").

### B. 42 U.S.C. § 1983 Cause of Action

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that a defendant's act or omission under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995). If a plaintiff fails to satisfy these requirements or to provide factual allegations supporting a viable cause of action, the claim is subject to dismissal. See Chappell v. Rich, 340 F.3d 1279, 1283-84 (11th Cir. 2003) (affirming the district court's dismissal of a § 1983 complaint because plaintiffs' factual allegations were insufficient to support the alleged constitutional violation).

## II. The Complaint

Daker sues Neil Warren, Cobb County Sheriff, in his individual capacity for damages and in his official capacity for damages and declaratory and injunctive relief. He sues Cobb County for damages and declaratory and injunctive relief. (Doc. 1, Compl. at 6.) Daker raises three claims. First, he alleges that the policy that prohibits inmates at the Cobb County Detention Center from receiving hard cover books restricts

3

AO 72A
(Rev.8/82)

the exercise of his Muslim faith, which requires that he seek knowledge about Islam, some of which is "only available in hard cover format." (Id. at 6-7.) Next, Daker claims that the policy and custom whereby "Muslim inmates at the Cobb County Jail are denied Jumu'ah service" on Friday afternoons also constitutes an illegal restriction on his exercise of the Muslim faith. (Id. at 7.) Daker claims that these policies violate his rights under the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act (RLUIPA). (Id. at 9.) Finally, Daker claims that he is being hampered in his attempts to prosecute several court actions he has initiated, due to the inadequacy of the Detention Center's law library, in particular its failure to provide "legal research materials such as Westlaw, Lexis, Federal Practice Digest, Georgia Digest, [or] Shepard's Citations." He also complains about the "policy and custom" that prohibits certain inmates, such as those charged with murder, as he is, from any access to the law library, and claims that he has not been allowed to research the books or bound volumes there. (Id. at 8.) Daker claims that these restrictions violate his right of access to the courts under the First and Fourteenth Amendments. (Id. at 9.) He seeks "appropriate declaratory, equitable, prospective, and injunctive relief," as well as nominal, compensatory, and punitive damages. (Id.)

## III.   Discussion

4

The Eleventh Circuit adheres to the following general approach in evaluating a prisoner's First Amendment free-exercise claim:

> When assessing whether a prisoner was deprived of [her] constitutionally protected right to freely practice [her] religion, . . . the district court must first determine whether the prisoner is sincere in . . . her asserted religious beliefs. . . . [and then] evaluate whether the prison regulation or policy [impeding the religious practice at issue] is reasonably related to a legitimate penological interest. . . . [This] reasonableness test is applied with a wide-ranging deference to the expert judgment of prison administrators.

Williams v. Sec'y for the Dep't of Corr., 131 F. App'x. 682, 685 (11th Cir. 2005) (citations and internal quotations omitted).

The Eleventh Circuit has summarized the requirements for a prisoner's prima facie case regarding an alleged violation of his RLUIPA rights as follows:

> To establish a prima facie case under section 3 of RLUIPA, a plaintiff must demonstrate 1) that he engaged in a religious exercise; and 2) that the religious exercise was substantially burdened. See Adkins [v. Kaspar], 393 F.3d [559,] 567 [(5th Cir. 2004)]; 42 U.S.C. § 2000cc-1(a). The plaintiff "bear[s] the burden of persuasion on whether the . . . government practice that is challenged by the claim substantially burdens the exercise of religion." 42 U.S.C. § 2000cc-2(b). If the plaintiff succeeds in demonstrating a prima facie case, the government must then demonstrate that the challenged government action is "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §§ 2000cc-1(a), 2000cc-2(b). In contrast, if the plaintiff fails to present evidence to support a prima facie case under RLUIPA, the court need not inquire into whether the governmental interest at stake was compelling.

5

See Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1228 (11th Cir. 2004).

Smith v. Allen, 502 F.3d 1255, 1276 (11th Cir. 2007).

"If a prison's regulation passes muster under RLUIPA, . . . it will . . . satisfy the requirements of the First Amendment, since RLUIPA offers greater protection to religious exercise than the First Amendment offers." Id. at 1264 n.5. A plaintiff may obtain prospective injunctive relief as well as nominal damages from a government entity or government official sued in his official capacity, but he may not obtain compensatory or punitive damages, nor may he obtain monetary damages from an official sued in his individual capacity. Id. at 1269-71, 1275-76.

"[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977). However, access to a law library "is not required of prisons, but rather is one way of assuring the constitutional right of access to the courts. The mere inability of a prisoner to access the law library is not, in itself, an unconstitutional impediment." Akins v. United States, 204 F.3d 1086, 1090 (11th Cir. 2000) (citation omitted). Moreover, an access-

6

to-the-courts claim may not proceed without an allegation of "actual injury regarding prospective or existing litigation" – such as "missing filing deadlines or being prevented from presenting claims" – while "in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement." Wilson v. Blankenship, 163 F.3d 1284, 1290 & n.10 (11th Cir. 1998); see also Lewis v. Casey, 518 U.S. 343, 369 (1996) (stating that the Supreme Court's own precedents, including Bounds, do "*not* establish a freestanding right of access to the courts, meaningful or otherwise") (emphasis in original).

Taking as true Daker's allegations regarding his religious practices, which the Court must do at this stage of the proceedings because they are not merely formulaic recitations of the elements of a claim, the Court finds that Daker has alleged viable claims that the Defendants have placed improper restrictions on his First Amendment and RLUIPA rights to practice his religion. However, because Daker has not alleged any "actual injury regarding prospective or existing litigation" – such as "missing filing deadlines or being prevented from presenting claims" – while "in the pursuit of specific types of nonfrivolous cases," see Blankenship, 163 F.3d at 1290 & n.10, his allegations regarding the denial of access to the courts do not state a viable claim for relief. Accordingly, this Court finds that Daker has alleged viable causes of action

7

(Rev.8/82)

under the First Amendment and RLUIPA regarding his religious practices, and those claims, as set forth above, are **ALLOWED TO PROCEED** as in any other civil action. However, Daker's claim regarding the alleged denial of access to the courts, his claims for money damages against Sheriff Warren in his individual capacity, and his claims for compensatory and punitive damages are **DISMISSED**.

## IV.   Service of Process and Related Matters

The Clerk **SHALL** send Daker a USM 285 form and summons for each Defendant named in the complaint. Daker **SHALL** complete a USM 285 form and summons for each Defendant and return the forms to the Clerk of Court within twenty (20) days of the entry date of this Order. Daker is warned that failure to comply in a timely manner could result in the dismissal of this civil action. The Clerk **SHALL** resubmit this action to the undersigned if Daker fails to comply.

Upon receipt of the forms, the Clerk **SHALL** prepare a service waiver package for each Defendant for whom Daker has completed a USM 285 form. The service waiver package must include, for each such Defendant, two (2) Notice of Lawsuit and Request for Waiver of Service of Summons forms (prepared by the Clerk), two (2) Waiver of Service of Summons forms (prepared by the Clerk), an envelope addressed to the Clerk of Court with adequate first class postage for use by each Defendant for

return of the waiver form, one (1) copy of the complaint, and one (1) copy of this Order. The Clerk **SHALL** retain the USM 285 form and summons for each Defendant.

Upon completion of a service waiver package for each such Defendant, the Clerk **SHALL** complete the lower portion of the Notice of Lawsuit and Request for Waiver form and mail a service waiver package to each Defendant. Defendants have a duty to avoid unnecessary costs of serving the summons. If a Defendant fails to comply with the request for waiver of service, that Defendant must bear the costs of personal service unless good cause can be shown for failure to return the Waiver of Service form.

In the event a Defendant does not return an executed Waiver of Service form to the Clerk of Court within thirty-five (35) days following the date the service waiver package is mailed, the Clerk **SHALL** prepare and transmit to the U.S. Marshal's Service a service package for each such Defendant. The service package must include the USM 285 form, the summons, and one (1) copy of the complaint. Upon receipt of the service package(s), the U.S. Marshal's Service **SHALL** personally serve each Defendant who failed to waive service. The executed waiver form or the completed USM 285 form **SHALL** be filed with the Clerk.

9

Daker **SHALL** serve upon each Defendant or each Defendant's counsel a copy of every additional pleading or other document that is filed with the Clerk of Court. Each pleading or other document filed with the Clerk **SHALL** include a certificate stating the date on which an accurate copy of that paper was mailed to each Defendant or each Defendant's counsel. This Court will disregard any submitted papers which have not been properly filed with the Clerk or which do not include a certificate of service.

Daker also **SHALL** keep the Court and each Defendant advised of his current address at all times during the pendency of this action. Daker is admonished that the failure to do so may result in the dismissal of this action.

Prisoner civil rights cases are automatically assigned to a zero-month discovery track. If any party determines that discovery is required, that party must, within thirty days after a defendant's first appearance, file a motion requesting a discovery period.

**IT IS SO ORDERED** this   3rd   day of January, 2011.


_/s/ Richard W. Story_
**RICHARD W. STORY**
United States District Judge